Our third case for this morning is Keith Curtis v. Costco Wholesale. Mr. Coffey. Thank you, Your Honor. May it please the court, my name is Tim Coffey and I represent the appellant and plaintiff Keith Curtis in this case. I thank you in advance for your time and consideration with the issues. This matter comes before you on the district court's entry of summary judgment against Mr. Curtis on all his claims. Just days after learning that 11-year veteran employee Mr. Curtis, who at the time was suffering from a disability, a mental disability, related to work-related stress and anxiety, days after learning that Mr. Curtis was contemplating taking a second medical leave from work within a six-month period, the defendants demoted him from his managerial position to an entry-level cashier. This demotion was not to an assistant manager position, it was not to a supervisory position, but a complete removal from his department and stripping of his entire Costco career. The evidence shows, and a reasonable jury can infer... But how can you say stripped of his entire Costco career when he still works for Costco? He started at above the cashier position, Your Honor. So it is a reduction from the point where he started. Right, but it's not his... Anyway, go ahead. The evidence shows, and a reasonable jury could infer, that the demotion in May 2012 and shortly thereafter the June 2012 denial of his request to return to work was because of and on the heels of his FMLA-protected activity and in interference of his FMLA rights. But he had no doctor's letter at that point saying that he was able to return to work, did he? At the point of the demotion? At the point when he goes on the medical leave of absence in May 21st of 2012, he does not have a doctor's letter, and indeed does not have a doctor's letter until January 2013 saying he can come back to work. Well, a doctor's letter I guess is one of the issues in this case, but I will say this, that when the doctor, Dr. Maddock, submitted the FMLA cert to start the second leave, it specifically stated therein that he has been asking for a job at a different location. And then we have the UNUM short-term disability insurer letter that specifically states UNUM and the doctor agree that he can work at a different location. And then you have on June 6th the following day, he submits a request to work at a different location. Then you have him applying to work at a different location two days later. Then you have him making two calls to the Costco corporate leave of absence manager telling the leave of absence manager that he is being harassed, that he has a disability, but yet he is able to work at a different location. Please call me back. He never gets a call back. All that activity is occurring in the early part of June 2012. That's the focus of this case. Unfortunately, the district court turned its focus to January 2013. That's not where the illegal act occurs. Well, I just want to at least make sure I understand the record correctly. I understand that UNUM said maybe he can work somewhere else. We're going to deny disability because we think he could work somewhere else. But it was certainly my understanding that the doctor never puts down on paper that he is cleared to work at a different location until January. There are seven doctor's notes that come in saying that he's unable to work. The doctor's notes actually say he may not return to work at this time. Not unable to work. What does that mean? I don't want to. That seems like a quibble to me. I understand. The point being that, as we make in the summary judgment and on appeal, there's no obligation to turn in a he can return to work slip in order to kick off and trigger FMLA obligations on the part of defendant. What FMLA obligations did Costco not fulfill? It gives him the first leave. He asks for the second leave. It gives him the second leave, and then it transfers him to Merrillville after he's released. Yes, a year plus later. So during that period of time, Costco has a clear obligation to reinstate him to his former position or equivalent one as soon as they learn from him that he believes he's ready to return to work. But he's well beyond the end of any FMLA period. This all was occurring in June of 2012. He's well within FMLA. But he doesn't have a note that says he can return to work in June of 2012. With all due respect, I don't believe the FMLA requires that he has a note that he can return to work. It requires him to give notice that he can return to work, and then the FMLA requires the defendant and allows the defendant to say, no, you need to go to a fitness for duty test. They didn't say that. They didn't engage in an interactive process. There's no interactive process for FMLA. That's ADA. There's two claims here. I'm sorry, Your Honor. Yeah. There's two claims. It's hard for me to see what Costco did wrong vis-à-vis the FMLA because even with Jalowitz's accusation that he's planning on taking it for a bad reason, they give him the leave. And they give him much more leave than the FMLA itself requires. He didn't want the leave. He wanted to come back to work. The claim here is that they refused to return him back to work in June 2012. The claim here is that they illegally demoted him weeks earlier in May 2012. Those are the two claims. Now, the fact that they put him back to work may, of course, affect damages down the road, and it would. He's back to work. It's a year and a half later. I beg to differ. I mean, on page 4 of your brief, you say, On May 21, 2012, Keith, overcome by anxiety and stress, aggravated by the demotion, submitted FMLA paperwork to Costco's disability insurer, Unum, and commenced a second medical leave of absence from work. I don't know how to understand that sentence other than as a request by Mr. Curtis to have the second leave. That's what you say happened. He submits the FMLA paperwork. Yes, he did. And they gave him the leave despite the fact that this subordinate employee has expressed a concern about what's going on. Yes, they did. And you just said a minute ago that he didn't want leave. He wanted leave. He got leave. Two weeks later, he was ready to return to work. He walked into work with a request to return to work, gave it to his former boss. The boss said, I'm never going to consider that. I'm never going to return to work. He was ready to return to work on June 6th, and he gave clear notice of that. And that's what he has to do. And there's both FMLA and EDA obligations after that. That's a case.  Okay. Okay. Thank you, Your Honor. With respect to FMLA retaliation and interference evidence, this is a case that shows Defendant Hines' aggressive and hostile behavior toward Keith, and that commences and comes to fruition when he's out on his first leave of absence. A lot of the record spends a lot of time whether this discussion with Jalowiak was protected activity. That's a big issue in this case. I think it's an issue for a jury. But back up a second. He definitely took a first FMLA leave from work. It's undisputed. It's undisputed that during that, two days before that, he looks Ms. Hines in the eyes and says, you are causing me work stress and anxiety. Two days later, he's out on leave. During leave, she calls him up, harasses him by the telephone several times. One time, she says, I don't like how you took leave. He comes back from leave, and we have, as the evidence shows, we have a series of intervening retaliatory acts linking that first FMLA leave with the demotion, regardless of what you think about the discussion that he had with Jalowiak. Put it aside. You have FMLA protected activity. Six months later, you have a demotion. The evidence shows you have a series of intervening retaliatory acts. In cases like that, summary judgment is not appropriate. Some of these intervening acts criticize about scheduling issues in October 2011 when he's out on leave, criticize for wearing a hoodie at work when there's no rule against it. The hoodie documentation itself falsely states he's been accused of it before. Nobody supports that. He's falsely claimed to be unavailable on a weekend when a manager calls him, yet defendant Hines says she doesn't know who that manager was. I asked every assistant manager who it was. Nobody called him. He's yelled at and belittled at meetings, and here's the clincher, and it's important because it's part of the alleged legitimate things he did wrong, the scheduling issue. As I state in my brief, the scheduling issue primarily involves this Jalowiak, okay? And Hines had an agreement with Jalowiak that Jalowiak testifies to in her deposition. She says, I had an agreement with Hines to work four days a week and not be scheduled for more than that. That's the agreement that Hines had with Jalowiak. What's Hines do? Goes behind Jalowiak's back, goes to Mr. Curtis and says, schedule her for five days. She pits the two together, and that's happening in early 2012. She pits the two together. They're on a collision course. Ms. Jalowiak is not happy that she is scheduled for five days by Keith. Keith is in constant stress and struggle trying to satisfy his boss with the five days, trying to listen to his subordinate that she only has an agreement with Hines for four days. This is orchestrated behavior for retaliation. That's what the evidence shows. And again, this is Jalowiak who comes up with a statement in early May, and you know what? If you read the first line of that statement, and I ask you to read it all, because we believe that that statement can be innocently construed just as much as it can be construed as some sinister plan to get some money that never happened anyways. So if you read the first line of that statement, and here it is, I have been asked by management to document my conversations with Keith Curtis. They claim Jalowiak came to them. We claim they went to Jalowiak. Either way, we claim it's protected activity. We think the evidence shows that. It occurs within days of the demotion. They don't honestly believe the reason for the demotion. That is the evidence, and the jury has every right to consider that. So we ask that you take a good long look at that statement by Jalowiak. She put it in writing. She was asked to put it in writing. It says Keith is researching his FMLA options. Is that unethical? It says he wants to get paid everything he has earned. Everybody would like to get paid what they have earned and accrued when they go out on leave. This is not a back injury. This is not a knee injury. This is a mental illness. The notice or the statement from Jalowiak also says he is going to go get approval from his doctor. It doesn't say he's going to go make up some injury. He's already been out on leave. They know it. He has the mental illness. They know it. So I guess the doctor is also. You're into your rebuttal time, you know, so you do whatever you want to. Okay. I'll wrap up. But essentially the doctor is also supposedly included on this scam or scheme. Thank you very much. All right. Thank you very much, Mr. Coffey. Mr. Dugan. Good morning, Your Honors. I'm William Dugan on behalf of Costco Hostel Corporation and Gail Hines. So I have just a factual question that I was reminded that I had by one of Mr. Coffey's last remarks. The FMLA itself does not require employers to provide paid leave. It's just leave that you're supposed to have and then, obviously, job reinstatement. So does it happen to be Costco's corporate policy to do that one better and give people paid leave when they're on FMLA leave, or is paid leave something that follows from a finding of short-term disability or something else? It can be unpaid or paid depending upon the type of leave that it is. For instance, if you have maternity leave, a portion of that can be paid. It's also obviously under the FMLA. It can be paid if you're granted some short-term disability. That's not really an issue here in this record, whether it was paid or unpaid. So I was trying to figure out what difference it made if it was going to be FMLA leave, what position Mr. Curtis was in, whether he was a manager of the optical counter or whether he was a cashier or anything else. If it's unpaid FMLA leave, it's just unpaid leave. If it's paid, then the job classification you had going into it could well make a difference. According to Ms. Jalowek, and when she came forward, and it is an undisputed record that she actually came forward to Leslie Ingram, who was the assistant manager. There's no dispute of how it happened. She came to him and said that Mr. Curtis told me one of two things. Either he's going to try and take a leave to preserve his managerial pay. So at least according to that statement, that's what Mr. Curtis wanted to do. Yeah, I was confused by her reasoning, but anyway. And frankly, I don't think it matters for the record whether Mr. Curtis or what was it, it matters what was reported. It was reported that he thought he was going to keep his managerial pay if he went out on leave or he was going to try and get a transfer. What he was trying to do, and it's clear from the record, is get out from underneath the performance improvement plan that he was on and that he was afraid that he was going to get demoted. And unfortunately for him, he decided to share that with his subordinate, who then went to Leslie Ingram, an assistant manager, and reported that because she didn't feel that it was right. And the undisputed record is Mr. Ingram then got his boss involved, who was a general manager of the warehouse, Ms. Hines. They thought it was serious enough that they asked her to put it in writing. She did, and that was the letter that counsel referred to when he was speaking. But it didn't stop there with Ms. Hines either. That letter then was forwarded on. Ms. Jellick's letter was forwarded on to Undisputed to Human Resources. But why don't they ever ask or communicate with Mr. Curtis during all of this? I mean, there's an accusation that there might be an application for FMLA leave that is not an appropriate use of that leave. Okay, I agree with you. That's a serious accusation. But the thing that's weird about this record is that they give him the leave. So surely they're not giving him the leave because they think FMLA is being abused. I assume they would have said, you don't get leave if they thought he wasn't entitled to it. So they must have decided that it was an appropriate request for FMLA leave. And the demotion somehow has to be tied to something else, except that it follows right on the heels of this information coming their way that there's going to be FMLA leave. And that's why I think the question arises, is he being retaliated against because he's going to ask for FMLA leave? Well, I think, first of all, there's no evidence on the record that he's going to ask for FMLA leave. And that's one of the obvious issues of whether he is. Jellick says he's going to, and they believe it. She says that he is going to go out on it. She'll go back to the statement. And her testimony is that she felt that he was going to scam the system and that he was going to take. By taking FMLA leave. To keep his not to take FMLA leave. That's nowhere in the record. There's nowhere that she said to Costco, Mr. Curtis told me that he is going to take FMLA leave. The only record, and it's the letter that counsel referred to, I believe it's at 2328 in the record, and there's nothing in here, Your Honor, about taking FMLA leave. It says that he's going to take a medical leave to keep his managerial pay or seek a transfer. And I think, respectfully, the court. I don't even get why seeking a transfer is scamming. You have to apply for them. Yeah, what he was trying to do, and this is the overall view of the record, and Mr. Curtis had problems starting his employment in April of 2011. That's even before his first medical leave. And when you read the record and the undisputed record, that whether it's Ms. Hines or other managers in the warehouse, were disciplining him for various infractions all the way starting in April and May of 2011. He then takes an FMLA leave in September of 2011 and he's out until November 1, 2011. He comes back. His performance does not improve over the next several months. And then they put him on a performance improvement plan. And by the way, the performance improvement plan in April of 2012 was Dan McMurray, Ms. Hines' boss, his idea. And frankly, the pressure is being ratcheted up on him, and he wants out of that warehouse. No, I understand all that. I'm looking at page 7 of your brief. I think you may be splitting hairs because you've quoted the Jalowitz statement on page 7. Curtis told me he had sat down and figured out at length that he was going to be using medical, quote-unquote, as a reason to get him out of losing his managerial pay if he got demoted so he would hurry up. And I don't question at all somebody wanting to look into that, but the thing that's so peculiar is that they give him the leave. And FMLA, the M part of FMLA is medical. So I don't know that it doesn't refer to medical leave. Well, as in the record, the warehouse does not decide. The decision-maker is here, Gail Hines, and you have Dan McMurray, who's her boss, and you also have Jonathan Shue in HR. They are not the same people deciding FMLA leave. And so it's what do the decision-makers know and when do they know it, right? Right, and so they say, fine, take the leave. And then somebody else says, we're demoting you because we think you're going to abuse leave, but we're going to give you the leave anyway. The leave that the decision-maker is here, McMurray, Hines, and Shue, there's nothing in the record that they have anything to do with whether or not someone can take family medical leave. The issue that they were dealing with as operations is, I have an associate coming to me, an hourly employee, reporting that a manager in our warehouse intends to take leave for an improper purpose. And they had no reason not to believe her as she testified. Do you think Costco just has a very bad organization that in one silo are people who think that there's going to be an abuse of the leave process, and in another silo there are people who process FMLA requests, so they happily give the request, while silo number one is of the view that this was an abuse of the system and therefore demotes the employee? That's the only sense I can make. Actually, I think it's the opposite. I think that it's a good corporation because, frankly, most of them would fire him on the spot. Most would not give FMLA leave. Help me out with the two silos, though. You have an integrity issue on the operations side that they believe that he was trying to take leave for an improper purpose. That's an integrity and honesty issue, and if you're running a warehouse or running a region, you are not going to want to have a manager who you don't trust. So they never tell the people in charge of actually granting leave that they think an abuse is about to occur. There's nothing in the record. He didn't apply for, there's nothing in the record of that, and he didn't apply for family medical leave until after his demotion. What do they have? They have a doctor's note saying he can't work. And they have the right to ask for more than that. Right, and then, as you questioned counsel during the opening, it's not only his doctor saying he can't work. If you look in the record of those seven doctor's notes that were submitted, most of them, in fact, as of June 21, 2012, it's Mr. Curtis submitting the doctor's notes directly to the warehouse and saying, I still cannot work. And so he didn't work through all of the rest of 2012, according to him and his doctor, and he testified in his deposition that he can't work. And even though his FMLA leave runs out, again, a lot of employers, when someone's FMLA leave runs out like that, you're gone. And they didn't do that. They let him stay on, leave, even though he had no legal right under the FMLA to stay on. And he had no legal right to be put into a new position in January of 2013 when he came back, and they worked with him and found him a new position within his restrictions that his doctor said. So I do truly believe that this is a case of no good deed goes unpunished from a factual standpoint. But also from a legal standpoint, I do not believe that his conversation with Ms. Jalouek is all of a sudden protected activity that puts Costco on notice that he wants to take FMLA leave. And it doesn't meet the standard. And then if you look at the rest of the evidence, if you start to get to causation and who had knowledge of whether he took a prior leave in September or who didn't, it just doesn't mesh with the record, Your Honor, of the decision-makers here of knowing about even his prior FMLA leave in September, his conversation with Ms. Jalouek and her report. Yeah, I'm just going to say, I mean, there are gaps all over this record. I mean, we'll deal with the case, of course, but there's a great deal that doesn't add up. I think it adds up if you look at the record from a continuum, from an employee. I mean, we don't know, for example, what are the consequences of being on this long leave. You know, is he being paid? Is his medical insurance continuing? Is there any implication whatsoever to Costco? Obviously, as you say, the FMLA imposes obligations over a much shorter time than the one that he was out. It's just very odd, and it continues to baffle me. Unless it was no skin off Costco's nose. You know, if they say, fine, take a leave. We may or may not take you back. We're not making any promises. Well, at that point, that would make at least some sense to me. But it doesn't add up. Respectfully, Your Honor, those issues, I don't think are fundamental to the issues to what the district court decided and what's before this court. Well, they are. They do relate, though, to when the Jalowicz accusation reaches the Costco management. Do they assume that he's going to take family and medical leave and therefore retaliate against him by demoting him, not firing him, but demotion is a form of retaliation, everybody would agree. Do they fail to accommodate his disability, his stress disability? That's the ADA claim that he has. So it does actually get back to the legal theories in the case. Again, I would respectfully disagree with that. What matters in this employment cases and 99.9% of other ones is, what does the record show and what do the decision makers know? And the decision makers had Ms. Jalowicz's letter and they had what she communicated to them. And it's undisputed, and even the plaintiff testified, Mr. Curtis testified, that if he did what he was accused of doing, which is trying to scam the system, that that would be a violation of the manager's standard of ethics. And this is nothing more than a case about honesty and integrity, and frankly there's nothing to connect. Again, Mr. McMurray, decision maker, there's no statements by him that somehow could even be perceived as retaliatory or discriminatory against Mr. Curtis. There's no statements by Mr. Hsu, who's the HR person. And what we have for Ms. Hines is her supposedly calling Mr. Curtis one time eight months earlier and saying she didn't like how he took his first leave. Obviously there's a gazillion stray remark cases that this court has decided and others, we figure that falls directly in with there. And respectfully... And so Costco demotes people as soon as one person makes an accusation. Well, there's nothing in the record, and it's obviously their burden to show similar-situated people, and they didn't do it. No, I'm just kind of wondering what a while. I mean, we're not here to assess business practices, but it's a pretty amazing business practice. Well, I think if you look at it, it's actually not. If you look for the continuum from April of 2011 all the way to May 20 of 2012 and his performance, and his performance as judged by many people, not just Ms. Hines. Then I'm making a last straw argument that this accusation from Jalowick on top of the performance and the scheduling and everything else was enough to prompt the demotion. You're on a PIP, and you're afraid you're going to get demoted. And what are you going to do to try and get off from underneath it? And the Family Medical Leave Act is for legitimate medical reasons to have a leave. And as of the time that he submitted that, there was nothing that went into any decision-maker's mind that all of a sudden he was disabled under the ADA or he had a legitimate medical reason. And then after he gets demoted, two weeks later, he submits a doctor's note that says he needs to be off. And so you can't all of a sudden say, well, what did the doctor say, May 21, and all of a sudden go back in time in a time machine and apply that to what the decision-makers were looking at on May 10 of 2012. I mean, you can't obviously do that and go back in time with the machine. But I think that's essentially what he's asking this court to do is apply what his doctor said two weeks later to decisions that were made in early May of 2012. Okay. Thank you very much. You're welcome. Mr. Coffey. Thank you, Your Honor. Just very quickly, this is a direct case. There's no similarly situated requirement for him to show. Second of all, Hines is either the decision-maker or she's the cat's paw. She just applies all the information. There's no evidence of independent investigation. Mr. Hsu and the other gentleman didn't do a thing. Third of all, it is undisputed on the record that demotion has nothing to do with the supposed past performance problem. The demotion is strictly because of the information that Jalowiak gave. Hines admits that herself. The past performance problems are nothing but a smokescreen. There is no scam. It's undisputed there's no scam. There is a disability. On summary judgment, they don't dispute disability. They didn't come here and say, we want summary judgment because he's not disabled. They don't dispute a non-summary judgment. It's not before you. There's no honest belief by these folks that he violated the ethics policy. They failed to simply ask him what he said to Jalowiak. They don't question the legitimacy of the family medical leave that he asked for two days later. They falsified Jalowiak's statement. Sorry, I didn't mention that before. They falsified Jalowiak's statement and turned it into a non-medical leave. And Hines wrote that, those words. Either Hines or her subordinate assistant manager wrote those words. She took a complaint about medical leave, and she said it was a non-medical leave right in the demotion counseling slip. And now they want to pass that buck up to Mr. Hsu. Mr. Hsu didn't write it. Hines told me when I asked her, those were her words. So they made their own genuine issue of material fact on that matter right there. Defendant's overall view of the record, they're welcome to it. They can present it to a jury. Plaintiff's evidence on summary judgment need not be compelling, need not be overwhelming, need not be destined to prevail. Even if their evidence is plausible, summary judgment should be denied. Only some evidence from which a jury could reasonably infer that defendant's demoted and then refused to return to work on the basis of FMLA-protected activity or disability. That's all that's called for here. One last thing. Accrued earned vacation time as a manager, he gets that no matter what happens to him. So he can take that leave. He can take it before the demotion's coming. He can take it after he's demoted. If he's due earned time as a manager, he gets that in vacation, and if they have a sick policy that says you accrue it and you get it, that's what he gets too, and he doesn't get anything else. There's nothing in the record he gets anything else. There's no scheme. He's not gaining. He didn't gain a thing. He was harassed and put out of work. Thank you very much. All right. Thank you, Mr. Coffey. Thank you, Mr. Dugan. We'll take the case under advice.